UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

KATHY ISMAIL

       Plaintiff,

       v.

JO ANNE B. BARNHART

Commissioner of Social Security,

       Defendant.

Civ. No. 04-2615 (WGB)

OPINION

APPEARANCES:

LANGTON & ALTER
Abraham S. Alter, Esq.
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
By:  Gina N. Shin
    Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

BASSLER, District Judge:

    Plaintiff, Kathy Ismail ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act ("the Act").  Plaintiff seeks review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments

("SSI"). Plaintiff requests that the Court reverse, or in the alternative, remand the Commissioner's decision. For the reasons set forth below, the Commissioner's decision is affirmed.

**I.    BACKGROUND**

**A.    Factual History**

Plaintiff is a forty-four year old individual, who has a high school education and has completed three years of college. She has past relevant work experience as a post office clerk and a substitute teacher. (R. at 11). Plaintiff claims she became unable to work on August 25, 1999 when she was injured in an automobile accident. Id. She suffered a cerebral concussion with loss of consciousness, a fractured mandible which had to be wired until November 1999, a fractured clavicle and injuries to her left knee and right foot. She also experienced neck, back, facial and temporomandibular joint ("TMJ")[1] impairments. Id.

After the accident, Plaintiff underwent surgery to stabilize the mandible fracture. Id. On February 23, 2000, Plaintiff's doctor performed surgery on Plaintiff's right foot to repair a fusion that had failed to fully heal. Id. at 13. Plaintiff had surgery on her left knee in June 2000 and underwent a series of injections in her left knee in December 2000. An effusion then developed in Plaintiff's left knee, which had to be drained. Id. Plaintiff claims to have undergone at least five surgeries and

---

[1]The temporomandibular joint encompasses the jaw area.

suggests that more surgeries are necessary.

   **B.**   **Procedural History**

       Plaintiff filed an application for benefits on May 31, 2000, alleging disability as of August 25, 1999.  (R. at 44).  The claim was denied initially and on reconsideration.  (R. at 33-35).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 2, 2002 before ALJ Dennis O'Leary.  (R. at 36).  On May 17, 2002, the ALJ issued a decision denying Plaintiff's request for benefits.  Plaintiff then sought review from the Appeals Council, which remanded the case back to the ALJ for further clarification and a new hearing. On January 31, 2003 the ALJ issued a partially favorable decision finding that Plaintiff was not entitled to DIB or eligible for SSI as of September 1, 2000.  (R. at 7-20).  Plaintiff again sought Appeals Council review.  The Appeals Council concluded that there were no grounds for review, thereby making the ALJ's decision final.  Plaintiff filed this action on June 4, 2004.

       **C.**   **The ALJ's Decision**

       To determine a claimant's eligibility for disability benefits, the Commissioner applies the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  First, a claimant must not be engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(b).  Second, the claimant must have a severe impairment that significantly limits his ability to

3

work.  20 C.F.R. § 404.1520 (c)).  At the third step, the ALJ
compares the claimant's injury to the Listing of Impairments in
20 C.F.R. § 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(d).  If
the claimant does not suffer from an impairment listed in the
Appendix, or its equivalent then the analysis proceeds to the
fourth and fifth steps.  20 C.F.R. § 404.1520 (e).

In step four, the ALJ must assess the claimant's residual
functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  A
claimant's RFC is measured by evaluating all relevant medical and
other evidence.  20 C.F.R. § 404.1545(a).  The ALJ must consider
the claimant's ability to meet the physical, mental, sensory and
other requirements of work.  Id.  In determining a claimant's
RFC, the ALJ must consider even those impairments which are not
severe.  20 C.F.R. 404.1520(e).  If the claimant can return to
his past relevant work then the ALJ will find him not disabled,
otherwise the ALJ must proceed to step five.  20 C.F.R.
404.1520(f).  Step five requires the ALJ to consider the
claimant's RFC, age, education and work experience to determine
if there is other work which exists in significant numbers in the
national economy that the claimant could perform.  20 C.F.R.
404.1520(g).

In his application of the sequential evaluation analysis,
ALJ O'Leary found that Plaintiff had not been engaged in any
"substantial gainful activity" since her accident.  (R. at 11).

At step two, ALJ O'Leary concluded that although Plaintiff's alleged psychiatric impairments were not severe, Plaintiff's physical injuries were severe and significantly limited her ability to work.  (R. at 11, 17).  At step three, ALJ O'Leary found that Plaintiff's injuries did not meet any of the listed impairments in Appendix 1.  (R. at 11).  ALJ O'Leary then moved to step four of his analysis.  He found that Plaintiff had the RFC to perform sedentary work as of September 1, 2000, but could not perform any of her past work, which was classified as light and medium in exertion.  (R. at 18).  Finally, based on the testimony of the independent medical expert and vocational expert, ALJ O'Leary determined that there were other jobs existing in significant numbers in the national economy that the Plaintiff could perform, and thus, Plaintiff was "not disabled." (R. at 18, 19).

After evaluating all of the evidence, the ALJ specifically made the following relevant findings:

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR §§ 404.1520(b) and 416.920(b)).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations since September 1, 2000, are

5

not totally credible for the reasons set forth in the body of the decision.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7.  From August 25, 1999 through September 1, 2000, the claimant lacked the residual functional capacity to perform a full, wide or significant range of work at the sedentary exertional level. However, since September 1, 2000, the claimant retains the residual functional capacity to perform a wide range of sedentary work.

8.  At all times material to this decision, the claimant has been unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

                              . . .

12. Based on exertional capacity limited to a significantly compromised range of sedentary work from August 25, 1999 through September 1, 2000, and the claimant's age, education, and work experience, a conclusion of "disabled" is reached within the framework of medical-vocational rule 201.00(h). Since September 1, 2000, a determination of "not disabled" is rendered based upon a capacity for a wide range of sedentary work, as directed [by] medical-vocational rule 201.28. There are a significant number of jobs in the national economy that she can perform. Examples of such jobs include work as an inspector of components, a parts counter and a surveillance monitor.

13. The claimant was under a disability from August 25, 1999 through September 1, 2000, but has not been under a "disability," as defined in the Social Security Act, since September 1, 2000 (20 CFR §§ 404.1520(f) and 416.920(f).

(R. at 19-20).

## II.  <u>STANDARD OF REVIEW</u>

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is

limited in its review to determining whether the Commissioner's decision is supported by "substantial evidence."  42 U.S.C. § 405(g); see also Richardson v. Perales, 402 U.S. 389, 410 (1971); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  According to the United States Supreme Court, substantial evidence means "more than a mere scintilla . . . [and] such relevant evidence as a reasonable mind might accept as adequate."  Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).  Upon reviewing the Commissioner's decision, the Court may affirm, modify or reverse the decision with or without remanding for a rehearing.  42 U.S.C. § 405 (g).  The Court may not, however, conduct a de novo review, but rather must affirm the Commissioner's decision if it is supported by substantial evidence, even if the record could support a different conclusion.  Id.; Alexander v. Shalala, 927 F. Supp. 785, 791 (D.N.J. 1995).

## III. DISCUSSION

Plaintiff argues that the ALJ's decision was not supported by substantial evidence for three main reasons, 1) the ALJ incorrectly found that Plaintiff's psychiatric impairments were not severe at step two, 2) at step three, the ALJ did not adequately evaluate whether Plaintiff's injuries met the criteria of any listed impairment in Appendix 1 and 3) the ALJ's step four and five analysis finding that Plaintiff can perform sedentary

7

work and that a number of jobs exist in the national economy that Plaintiff can perform was unsupported by substantial evidence.

The Court finds that in his second step analysis, the ALJ appropriately rejected Plaintiff's claim that her psychiatric impairments were severe. In step three, the ALJ sufficiently analyzed whether Plaintiff's injuries met the criteria of any listed impairment in Appendix 1. Additionally, the Court holds that substantial evidence supports the ALJ's findings in step four and five that Plaintiff had the RFC to perform sedentary work and that there were a number of jobs in the national economy available to Plaintiff.

## A. The ALJ Appropriately Found That Plaintiff's Psychiatric Impairments Were Not Severe

At step two of his analysis, ALJ O'Leary found that Plaintiff's musculoskeletal impairments were severe, a finding which Plaintiff does not dispute. Plaintiff disagrees, however, with the ALJ's finding that Plaintiff's claims of dizziness and depression were not significantly limiting and were therefore, not severe. While Plaintiff correctly points out that step two is meant to be a de minimis test, Plaintiff's injuries are not sufficient. See Plaintiff's Memorandum of Law ("Pl. Br.") at 25, 27. According to 20 C.F.R. § 404.1520(c), the impairment must significantly affect the claimant's mental or physical ability to do basic work activities. Additionally, "evidence of a 'physical

or mental impairment' must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Claussen v. Chater, 950 F. Supp. 1287, 1293 (D.N.J. 1996) (quoting 42 U.S.C. § 423(d)(3)).

Defendant asserts that no clinical or laboratory diagnostic findings show that Plaintiff suffers a severe mental impairment other than Plaintiff's own allegations. Defendant's Memorandum of Law ("Def. Br.") at 6. The Court agrees. The ALJ found that no medical evidence supported the Plaintiff's allegations of depression and dizziness. As the ALJ properly recognized, the Plaintiff's dizziness and depression do not prevent her from reading books, newspapers or the Koran, which suggests a "fairly well functioning power of concentration." (R. at 17.) The ALJ further noted that Dr. Chen, the Plaintiff's neurologist, stated that the claimant's mental status was normal. (R. at 12.) Dr. Chen also noted that Plaintiff's MRI performed on September 22, 1999 was normal. Id.

Plaintiff cites to case law supporting the contention that only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. (See Pl. Br. at 27) (citing Bowen v. Yuckert, 482 U.S. 137 (1987)). Accordingly, cases involving a remand because of a step two violation generally deal with claimants who were denied benefits entirely because their

impairments were held to lack severity.  See McCrea v.
Commissioner of Social Security, 370 F.3d 357, 361 (3d Cir.
2004).  Here, the ALJ did not deny benefits because of step two
and actually considered all of Plaintiff's injuries in assessing
her residual functional capacity ("RFC") which was used to
determine her disability status.  The ALJ properly found that the
Plaintiff's mental impairments were not severe.

    **B.**   **The ALJ's Finding That Plaintiff's Injuries Did Not
Meet a Listed Impairment in Appendix 1 is Proper**

In the third step of the sequential evaluation process, the
ALJ must determine if the Plaintiff's impairments or combination
of impairments is equivalent to any listed impairment.  Plummer
v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Plaintiff contends
that the ALJ's determination was insufficient because he did not
indicate which impairment from the Listing of Impairments in
Appendix 1 was comparable to Plaintiff's injury. (Pl. Br. at 29-
30) (citing Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981)).
Plaintiff argues that the ALJ provided no guidance amongst the 14
chapters and over 120 separate listed impairments listed in
Appendix 1. (Pl. Br. at 31).  The ALJ, however, stated that
"particular scrutiny was given to the claimant's condition in
light of Listing 1.00, the Musculoskeletal System[,]" narrowing
the potential impairments to only Chapter 1 of the Appendix,
unlike Plaintiff suggests.  (R. at 11).

Plaintiff asserts that the ALJ did not undertake the

10

appropriate analysis in light of the Third Circuit's decision in
Burnett v. Comm'r of Social Security Admin., 220 F.3d 112 (3d
Cir. 2000). (Pl. Br. at 30-33). Plaintiff incorrectly maintains
that the ALJ's analysis is almost a "word-for-word copy" of the
analysis rejected in Burnett. (Pl. Br. at 31). In reviewing the
two holdings, the Burnett ALJ's step three analysis states in its
entirety:

> Although the claimant has established that she suffers
> from a severe musculoskeletal impairment, said
> impairment failed to equal the level of severity of any
> disabling condition contained in Appendix 1, Subpart P
> of the Social Security Regulations No. 4.

Burnett, 220 F.3d at 119. The Burnett Court concluded that such
a bare conclusion is beyond meaningful review. Id. The court
remanded the ALJ's "hopelessly inadequate step three ruling" for
a discussion of the evidence and an explanation of the reasoning
supporting a determination that Burnett's severe impairment does
not meet or is not equivalent to a listed impairment. Id. at
120.

ALJ O'Leary, on the other hand, provided a specific section
of Appendix 1--Listing 1.00, the Musculoskeletal System--to which
Plaintiff's impairments were comparable. (R. at 11). Considering
the number of injuries Plaintiff has sustained to her face,
collarbone, neck, back, foot and knee, Plaintiff's injuries are
comparable to several of the listed impairments in section 1.00
of Appendix 1. Id. ALJ O'Leary spent three full pages discussing

all of the medical history of claimant and made an ultimate
conclusion that Plaintiff's impairments did not meet the criteria
of any listed in Chapter 1 of the Appendix.  (R. at 12-14).  In
particular, ALJ O'Leary summarized the reports of Plaintiff's
doctors showing healing of Plaintiff's mandibular fractures,
ability of Plaintiff to ambulate effectively and Plaintiff's
range of motion:

> Richard K. Stern . . . noted that a closed reduction of
> mandibular fractures was performed on the claimant on
> August 26, 1999.  The claimant presented for evaluation
> on October 13, 1999, and the fractures were noted to be
> healing well and the maxillomandibular fixation was
> removed. . .The claimant returned on October 22, 1999
> for removal of the maxillary and mandibular arch bars,
> and the fractures were noted to be well healed.

> H. Kahng, MD [reported that], [o]n physical
> examination, the claimant ambulated without any
> assistive device, but had a slow gait pattern, and she
> favored her left lower extremity during ambulation.
> Dr. Kahng observed that the claimant could stand on her
> heels and toes with the contact guard, but with
> significant difficulty on the left side.  He noted that
> the claimant was able to squat less than 25% of normal
> with the contact guard, but that she got on and off the
> examination table independently.

> Dr. Allegra. . . indicated that the claimant was able
> to lift 6-10 pounds frequently and 11-20 pounds
> occasionally.  He noted that the claimant was able to
> bend and squat occasionally, and to reach frequently
> with only moderate restrictions as to activities
> involving unprotected heights and mild restrictions as
> to working around moving machinery and operating
> automotive equipment.

(R. at 12-13).  In making his determination, ALJ O'Leary also
properly discounted testimony by Plaintiff's treating physician,

who failed to provide any clinical findings or objective basis for his opinions that Plaintiff's "pain is profound and intractable." (R. at 14).

In addition, ALJ O'Leary specifically asked the independent medical examiner, Dr. Marlin Fechner, whether Plaintiff's impairments met or equaled a listing (R. at 243). Dr. Fechner affirmed that Plaintiff's impairments did not meet any listed impairment. (R. at 16, 243). ALJ O'Leary further found it compelling that "no treating or examining physician ha[d] mentioned findings equivalent in severity to the criteria of any listed impairment." Thus, ALJ O'Leary's determination in step three cannot be considered conclusory like the ALJ's sole statement in Burnett. Substantial evidence supports ALJ O'Leary's finding that Plaintiff did not meet any of the criteria of a listed impairment in Appendix 1.

C.    **The ALJ'S Findings in Step Four and Five Were Supported by Substantial Evidence**

As Plaintiff's injuries were not equivalent to any of the listed impairments in Appendix 1, the ALJ must proceed to step four and five of his analysis. It is undisputed that Plaintiff satisfied the fourth step by proving that she no longer could perform her prior work as a substitute teacher, mail carrier and desk clerk because of her severe impairment. 20 C.F.R. § 404.1520(e); (R. at 18). Plaintiff argues, however, that the ALJ improperly determined that Plaintiff had the RFC for sedentary

13

work, by wrongly discounting her testimony, the testimony of Plaintiff's witnesses and evidence submitted by Plaintiff's doctors and vocational expert.  Plaintiff further maintains that ALJ O'Leary's inappropriate determination at step four led to his improper finding at step five that there are a substantial amount of jobs in the national economy that Plaintiff can perform.

> **1.   The ALJ's Finding That Plaintiff Could Perform Sedentary Work was Supported by Substantial Evidence.**

To determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy and very heavy based upon the definitions in the Dictionary of Occupational Titles, which is published by the Department of Labor based upon the guidelines in 20 C.F.R. §§ 404.1567 and 416.967.

Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a).

The ALJ's decision that Plaintiff is capable of performing sedentary work is supported by substantial evidence on record. ALJ O'Leary noted that Dr. Kahng reported that Plaintiff

ambulated without any assistive device, could get off and on the examination table unassisted, exhibited no significant paracervical tenderness or focal muscle atrophy and showed fairly well preserved range of motion in her lower extremities. (R. at 12). Dr. Allegra, who had treated Plaintiff since 1999, found that Plaintiff could lift 6-10 pounds frequently and 11-20 pounds occasionally. (R. at 13). Dr. Kahng's and Dr. Allegra's testimony was corroborated by Dr. Fechner, who also stated that Plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently. Id. Dr. Fechner also testified that Plaintiff could stand and walk for a total of at least two hours in an eight-hour workday and could sit up to six hours with stretches every forty-five minutes. (R. at 16,18). Thus, ALJ O'Leary relied on substantial evidence to conclude that Plaintiff could perform sedentary work.

Additionally, ALJ O'Leary properly discussed or refuted evidence that was contrary to his finding, including the testimony of the Plaintiff, the testimony of Plaintiff's witnesses and evidence of Plaintiff's physicians and vocational expert.

> a.   The ALJ properly found that Plaintiff's subjective complaints were not credible.

Plaintiff argues that the ALJ's determination that Plaintiff is not credible because she became pregnant and left work prior to her accident is "stupid, insulting and inane." (Pl. Br. at

15

38).[2]  Plaintiff properly recognizes that the ALJ must give
serious consideration to a claimant's subjective complaints.  See
Smith v. Califano, 637 F.2d 968, 972 (3d. Cir. 1981) (citing
Thorne v. Weinberger, 530 F.2d 580 (4th Cir. 1976).  Plaintiff
fails to acknowledge, however, that allegations of pain and other
subjective symptoms must be supported by objective medical
evidence.  Hartranft v. Apfel, 181 F.3d 358 (3d. Cir. 1999)
(citing 20 C.F.R. § 404.1529).

     In the Smith case cited by Plaintiff, the Court found all
evidence of disabling pain favorable to the plaintiff.  In
contrast, evidence by Plaintiff Ismail's treating physicians and
the independent medical examiner contradict Plaintiff's
complaints. (See supra p. 12-13).  Although Plaintiff's treating
physician Dr. Parhar corroborates Plaintiff's testimony that she
is unable to work, the ALJ properly discounted Dr. Parhar's
testimony, which was unsupported by any clinical findings or
objective basis as discussed in more detail below.  (See infra p.
19-20).

     ALJ O'Leary found that the issue of childcare was a
credibility factor.  (R. at 17).  He noted that Plaintiff had

_____

     [2]It must be noted, that Plaintiff's attorney does his client
a grave disservice by engaging in verbal attacks against the ALJ.
These insulting remarks pervade Plaintiff's brief and essentially
discredit Plaintiff's position.  Such language is strongly
discouraged by this Court as well as the Local Rules for the
District of New Jersey and the Third Circuit's Local Appellate
Rule 28.1.

left work to go on maternity leave prior to her accident and that
Plaintiff was the primary care giver of her child.  <u>Id.</u>
Plaintiff does not dispute these findings, but argues that the
ALJ's determination reveals his "Neanderthal attitude." (R. at
16).  The ALJ, however, did not rest his determination on the
issue of childcare alone, but further stated that Plaintiff's
testimony was inconsistent with the testimony of the medical
expert and vocational expert.  He found that although there was
no doubt that Plaintiff had sustained serious orthopedic
problems, Plaintiff's injuries had healed and Plaintiff was
reduced to no less than sedentary work as Dr. Fechner testified.
(R. at 17).

 Where the ALJ's findings of fact are supported by
substantial evidence, the Court is bound by those findings, even
if it would have decided the factual inquiry differently.
<u>Hartranft</u>, 181 F.3d at 360.  Even if the Court may have
determined this issue differently, the Court did not have the
ability to view the Plaintiff at the hearing, examine her
testimony or observe her demeanor on this issue.  Therefore, the
Court grants deference to the ALJ's determination where it was
supported by substantial evidence.  <u>See</u> <u>Rutherford v. Barnhart</u>,
399 F.3d 546 (3d Cir. 2005)(in reviewing the record for
substantial evidence, court may not weigh the evidence or
substitute its own conclusions for those of the fact finder); <u>see</u>

also 42 U.S.C.A. § 405(g) (On review of findings of the Secretary of Health and Human Services, deference must be accorded to administrative law judge on issues of credibility since he heard witnesses and observed their demeanor.).

Plaintiff also argues that ALJ O'Leary improperly failed to comment on Plaintiff's husband's testimony and did not evaluate the testimony of Plaintiff's friend. (Pl. Br. at 38). ALJ O'Leary, however, did consider the testimony of Plaintiff's husband and her friend when making his determination that Plaintiff had the residual functional capacity after September 1, 2000 to perform a wide range of sedentary work. (R. at 16-17).

> b.   The ALJ properly discounted evidence from
>       Plaintiff's physicians and vocational expert.

Plaintiff argues that this case should be remanded because the ALJ discounted the evidence from Plaintiff's treating physicians and her vocational expert. The regulations state that the opinion of a treating physician may be accorded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. Accordingly, ALJ O'Leary properly accorded little significance to the assessments of Dr. Allegra and Dr. Parhar, Plaintiff's treating physicians, where they were unsupported by clinical and laboratory reports and appeared to rely heavily on Plaintiff's subjective

18

complaints.  (R. at 13-14).  Plaintiff fails to point to any
clinical or laboratory reports to the contrary.  (Pl. Br. at 10-
12, 35).

In fact, Dr. Allegra's treatment notes during the relevant
period consist almost entirely of Plaintiff's symptoms.  (R. 185-
87, 207, 209).  Nevertheless, Dr. Allegra's own RFC assessment
was consistent with ALJ O'Leary's determination that Plaintiff
had the ability to lift 20 pounds occasionally and 10 pounds
frequently as required for sedentary work.  Thus, ALJ O'Leary
gave adequate consideration to Dr. Allegra's findings, which were
unsupported by clinical and laboratory evidence.

Similarly, Dr. Parhar's assessment of Plaintiff's pain
consisted of one note and a Clinical Assessment of Pain, but no
clinical findings or objective basis for his opinion.  (R. at 14,
208, 210).  Dr. Parhar determined, however, that the Plaintiff's
"pain is profound and intractable" and Plaintiff "will be totally
restricted and thus unable to function at a productive level of
work."  (R. at 14, 210).  ALJ O'Leary properly recognized that
the issue regarding Plaintiff's ability to work is reserved to
the Commissioner.  (R. at 14).  The agency regulations, 20 C.F.R.
§ 404.1526 (1976), state that under these kinds of circumstances:

> The function of deciding whether or not an individual
> is under a disability is the responsibility of the
> Secretary.  A statement by a physician that an
> individual is , or is not, 'disabled,' 'permanently
> disabled,' 'totally disabled,' 'totally and permanently
> disabled,' or 'unable to work,' or a statement of

similar import, being a conclusion upon the ultimate
issue to be decided by the Secretary, shall not be
determinative of the question of whether or not an
individual is under a disability.

ALJ O'Leary, therefore, appropriately accorded no significant
weight to Dr. Parhar's statement.   Although the Commissioner
considers medical evidence and medical source opinions, he has
the ultimate responsibility of weighing that medical evidence and
making choices between conflicting evidence.   See 20 C.F.R. §§
404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946; see also
Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992).

Lastly, Plaintiff argues that the ALJ wrongly discounted the
opinion of her vocational expert.   As noted above, ALJ O'Leary's
decision to accord no significant weight to Mr. Wolf's statement
that claimant cannot work, a decision that is the ALJ's ultimate
responsibility, is proper.   Furthermore, ALJ O'Leary discounted
Mr. Wolf's testimony because as an individual with a doctorate in
education and a masters in business administration, he is not an
acceptable medical source as provided under 20 C.F.R. §§ 404.1513
and 416.913.   ALJ O'Leary added that Mr. Wolf also appeared to
rely heavily on the subjective complaints of Plaintiff, whose
testimony lacked credibility.   (R. at 14-15).   Based on ALJ
O'Leary's stated reasons, he properly accorded no significance to
Mr. Wolf's testimony.

In reviewing Plaintiff's subjective complaints of pain, the

20

testimony of her witnesses, and the assessments made by
Plaintiff's physicians and vocational expert, ALJ O'Leary's
finding that the Plaintiff had the RFC to perform sedentary work
was supported by substantial evidence.[3]

> **2.   The ALJ's Finding That a Number of Jobs Exists in
> the National Economy That Plaintiff Can Perform is
> Supported by Substantial Evidence.**

The burden shifts during the fifth step of the Social
Security analysis to the Commissioner to show that Plaintiff can
perform other work that is available in the national economy.
Ferguson v. Schweiker, 765 F.2d 31, 36 (3d Cir. 1985).  In doing
so, the Social Security Administration must consider Plaintiff's
residual functional capacity along with her age, education and
past work experience.  See 20 C.F.R. §  404.1520(e).  ALJ
O'Leary's finding that the Plaintiff could perform work in the
national economy was supported by the testimony of Dr. Fechner
and Mr. Meola, the vocational expert.

Plaintiff incorrectly maintains that the ALJ "dismissed even
his own vocational expert's testimony." (Pl. Br. at 21-22, 42).
ALJ O'Leary specifically relied on the vocational expert's

---

[3]Plaintiff further claims that ALJ O'Leary accorded too much
weight to Dr. Fechner, who Plaintiff states the ALJ "utilized to
perform the dirty work that the ALJ cannot do alone." (Pl. Br.
At 19).  Yet, there is no evidence in the record that suggests
that Dr. Fechner's medical report was not independent.  Further,
Plaintiff's council made no effort to impeach Dr. Fechner's
credibility at the January 31, 2003 hearing to show that his
testimony was indeed "non-descript nebulous nonsense."  Id.

21

responses to the hypotheticals ALJ O'Leary posed at the hearing. (R. at 17).  Based on those hypotheticals, Mr. Meola testified that jobs exist in the national economy that the Plaintiff was capable of performing, such as inspector of components, parts counter or surveillance monitor.  (R. at 256-260).  Furthermore, ALJ O'Leary's reliance on hypotheticals is not inappropriate as Plaintiff suggests (Pl. Br. at 21-22).  The ALJ was entitled to rely upon the vocational expert's responses as substantial evidence for his step five determination.  See Rutherford v. Barnhart, 399 F.3d 546 (3d Cir. 2005).

Plaintiff's contention that the Third Circuit's decisions in Jesurum v. Secretary 43 F.3d 114 (3d Cir. 1995) and Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) are controlling in this case is misguided.  (Pl. Br. at 39-41).  In Jesurum, the ALJ relied exclusively on the grids in arriving at his determination that Jesurum was not disabled.  43 F.3d at 121.  Similarly, in Sykes the Court held that the Commissioner may not determine that non-exertional impairments do not significantly erode occupational base under medical vocation guidelines ("grids") without taking additional vocational evidence establishing that fact.  228 F.3d at 261.  That is not the case here.  Although the ALJ found that medical-vocational rule 201.28 directed a determination that Plaintiff was "not disabled," ALJ O'Leary's determination was "based on the testimony of the medical expert and vocational

22

expert" and was thus, supported by substantial evidence.  (R. at 18-19).

IV.  **CONCLUSION**

For the reasons stated in this Opinion, this Court affirms the Secretary's decision to deny the claimant Disability Insurance Benefits and Supplemental Security Income.

An appropriate Order accompanies this Opinion.

<u>    /s/ William G. Bassler    </u>
William G. Bassler, U.S.S.D.J.

Dated: October 7, 2005

23